CCC:EPR
F.# 2016R00647

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 12 2018 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

DANIEL ARNOLD,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

INFORMATION

Cr. No. 18cr21 (ADS)
(T. 18, U.S.C., §§ 981(a)(1)(C),
1349 and 3551 et seq.; T. 21,
U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

THE UNITED STATES CHARGES:

### INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

1. The defendant DANIEL ARNOLD was a principal at a list brokerage company with corporate offices in Connecticut. ARNOLD brokered and managed mailing lists on behalf of clients in the direct mail business.

2. The defendant DANIEL ARNOLD served as an agent and "middleman" for mailing campaigns involving deceptive mailings sent to consumers throughout the United States and abroad. ARNOLD recommended and procured mailing lists of consumers to whom the deceptive mailings would be sent, and rented out lists of consumers who responded to these campaigns to other mailers seeking to send deceptive mailings.

## The Fraudulent Scheme

3.  In or about and between January 2012 and September 2016, the defendant DANIEL ARNOLD, together with others, knowingly facilitated a scheme to fraudulently induce victims throughout the United States ("the Victims") to pay money for falsely promised psychic services, cash awards, and luxury prizes. The fraudulent scheme operated in the name of and in conjunction with Destiny Research Center, Ltd., a corporation incorporated in Hong Kong, and generally worked as follows:

(a)  Members of the conspiracy created numerous direct mail solicitations supposedly from world-renowned psychics, falsely and fraudulently claiming that the Victims were being contacted because they had been the subject of specific visions by the psychics that the Victims were due to receive large sums of money in lotteries and by other means. The solicitation letters appeared personalized, repeatedly referring to the recipients by first names and often containing portions that appeared handwritten.

(b)  As part of the scheme, the false solicitations further urged the Victims to purchase various products and services supposedly associated with psychic visions in order to ensure that the foreseen good fortune would come to pass. The Victims were directed to pay amounts between $20 and $50 for these products and services. The Victims were provided pre-addressed return envelopes and instructed to return payments to mailboxes controlled by a "caging service." A caging service was a company that opened post office boxes on behalf of direct mailers and handled return mail and payments that

arrived at the boxes. Although the solicitations communicated to the Victims that they had been individually selected, the solicitations were, in fact, identical, mass-produced form letters sent to the Victims based on their inclusion in mass-mailing lists targeted to vulnerable consumers. Members of the conspiracy did not send large cash awards or other valuable prizes to any of the Victims who responded to the deceptive solicitations.

    (c) Through the execution of the fraudulent scheme, DANIEL ARNOLD, as one of four equity partners in a list brokerage company, supervised list brokerage and list management on behalf of the conspiracy, both directly and through his employees. On a monthly basis, ARNOLD acted as a list broker for members of the conspiracy, identifying and ordering mailing lists of thousands of consumers to whom members of the conspiracy would send deceptive solicitations. At the conclusion of each monthly mailing campaign, members of the conspiracy conveyed to ARNOLD the list of the Victims who had sent payments in response to a given deceptive solicitation ("buyers") in the previous month, so that ARNOLD could recommend lists for the next deceptive mailing and rent out names of recent buyers. As a list broker, ARNOLD identified and entered into transactions to rent thousands of names at a time for members of the conspiracy. ARNOLD also acted as a "list manager" for members of the conspiracy, meaning that ARNOLD promoted and rented out mailing lists generated through the conspiracy, often to other mailers engaged in deceptive solicitation campaigns. ARNOLD's employer received a commission for list brokerage and list management transactions conducted on behalf of the conspiracy.

4

(d)     It was also part of the scheme that DANIEL ARNOLD knew that the solicitations created by the members of the conspiracy and mailed to millions of consumers were designed to deceive recipient consumers into paying fees under the false pretense of having been the subject of supposedly personalized psychic services.  ARNOLD routinely received copies of the deceptive mailings sent to consumers.  At times, ARNOLD e-mailed a sample of the deceptive mailing piece created by members of the conspiracy to mailers that owned lists offered for rental, as well as mailers seeking to rent lists owned by members of the conspiracy.  In addition, in order to monitor the use of lists rented to other mailers in list management transactions, ARNOLD used a "decoy" or "seed" address, which was an address inserted into a mailing list that was not the residence of an actual consumer, but instead was controlled by someone associated with the list owner.  Over the course of the conspiracy, ARNOLD used his own home address as a decoy address on numerous lists, including those rented to the members of the conspiracy, and thus received copies of the deceptive mailings sent on behalf of the conspiracy.

(e)     On November 19, 2014, a federal district court entered a temporary restraining order enjoining certain members of the conspiracy from sending certain deceptive mailings to consumers living in the United States, pursuant to Title 18, United States Code, Section 1345 (civil injunctions against mail fraud).  DANIEL ARNOLD knew that members of the conspiracy were subject to the temporary restraining order.  After the entry of the temporary restraining order, ARNOLD continued to rent lists of Canadian "buyers" on behalf of members of the conspiracy.

5

(f) Over the course of the conspiracy detailed above, DANIEL ARNOLD and other members of the conspiracy caused millions of solicitations to be sent, by United States mail to Victims – many of whom were elderly – throughout the United States, including in the Eastern District of New York.

<u>CONSPIRACY TO COMMIT MAIL FRAUD</u>

4. The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

5. In or about and between January 2012 and September 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DANIEL ARNOLD, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Victims, and to obtain money and property from the Victims, by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, did place matters and things in a post office and authorized depository for mail matter, to be sent and delivered by the United States Postal Service, and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom, any such matters and things, contrary to Title 18, United States Code, Section 1341.

(Title 18, United States Code, Sections 1349 and 3551 <u>et seq.</u>)

6

## CRIMINAL FORFEITURE ALLEGATION

6. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

7. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

7

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

_____
RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

_____
GUSTAV EYLER
ACTING DIRECTOR
CONSUMER PROTECTION BRANCH
U.S. DEPARTMENT OF JUSTICE